OPINION *Page 2 
{¶ 1} Defendant-Appellant, Austin Ghiloni appeals his conviction and sentence by the Licking County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.
 {¶ 2} On April 17, 2008, the Licking County Grand Jury indicted Defendant-Appellant, Austin Ghiloni, on one count of Aggravated Possession of Drugs, in violation of R.C. 2925.11(A)(C)(1)(a), and one count of Possession of Drug Paraphernalia, in violation of R.C. 2925.14(C)(1). Appellant filed a motion to suppress, claiming an illegal stop. On June 23, 2008, the trial court held a hearing on the motion to suppress. The following testimony was adduced at the hearing.
 {¶ 3} Officer Steven Benner, a K-9 officer with the Newark City Police Department, was patrolling the area of South 25th Street and the Buckeye Avenue interchange in Newark on April 9, 2008. (T. 7). He stated there had been numerous break-ins in the area that includes Legends Smelting, a recycling center that has reported stolen materials and is known as a drop-off location for stolen copper and tin. (T. 9). There were not any reports of break-ins that evening. (T. 22).
 {¶ 4} At approximately 12:30 a.m., Officer Benner observed a man, later identified as Appellant, walking westbound on Buckeye Avenue past Legends Smelting. Officer Benner saw that the man was carrying two large, black trash bags in each hand. (T. 7).
 {¶ 5} Officer Benner parked his cruiser, got out of the cruiser, identified himself and asked Appellant to come over to the cruiser. (T. 9-10). Appellant complied. The officer asked Appellant what he was doing that night and Appellant responded that he had been collecting aluminum cans and was walking to his grandmother's house. (T. *Page 3 
19-20). Appellant testified that the officer asked him to put the trash bags down and sit on the side of the road. (T. 29). Officer Benner testified that he asked Appellant if he had any identification with him. (T. 10). Appellant responded that he did not have any pockets. Officer Benner asked Appellant why he had a large bulge in his pant leg where a pocket should be. Appellant stated that he had a sandwich bag with his identification in it. He pulled out the bag and handed it to the officer. (T. 10).
 {¶ 6} Officer Benner observed that inside the clear sandwich bag was Appellant's identification, a hypodermic needle, a shoestring, several needle caps and a small straw. (T. 11). Appellant stated that the needle was his because he was a diabetic and that he had found the straw. (T. 12). Pursuant to Officer Benner's training as a K-9 officer, Officer Benner recognized the hypodermic needle and straw as drug paraphernalia. (T. 12-13).
 {¶ 7} Officer Benner then asked Appellant to lean against the cruiser so the officer could conduct a pat down for weapons. (T. 13). During the course of the pat down, the officer felt an object in Appellant's pocket. (T. 14). Officer Benner asked Appellant what it was and Appellant stated that is was a bottle of liquid Oxycodone. The officer asked Appellant to remove it, but Appellant refused. Appellant was then placed under arrest for possession of drug paraphernalia. (T. 14). As stated above, Appellant was indicted for one count of Aggravated Possession of Drugs, in violation of R.C. 2925.11(A)(C)(1)(a), and one count of Possession of Drug Paraphernalia, in violation of R.C. 2925.14(C)(1).
 {¶ 8} The trial court issued a judgment entry on June 25, 2008 denying Appellant's motion to suppress. The trial court held a hearing on June 26, 2008 wherein *Page 4 
Appellant changed his plea to "no contest." The trial court accepted the plea and found Appellant guilty of possession of drug paraphernalia and aggravated possession of drugs. Appellant was sentenced to five years of community control and other sanctions. Appellant was also sentenced to three years post-release control.
 {¶ 9} It is from this conviction and sentence Appellant now appeals.
 {¶ 10} Appellant raises three Assignments of Error:
 {¶ 11} "I. THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT'S MOTION TO SUPPRESS BY HOLDING THE INTERACTION BETWEEN DEFENDANT/APPELLANT AND OFFICER BENNER WAS A `CONSENSUAL ENCOUNTER' AS OPPOSED TO AN `INVESTIGATORY STOP' THEREBY REMOVING THE INTERACTION FROM THE PURVIEW OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
 {¶ 12} "II. THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT'S MOTION TO SUPPRESS AND THEREBY DEPRIVED DEFENDANT/APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY HOLDING OFFICER BENNER HAD `REASONABLE SUSPICION' TO PERFORM AN `INVESTIGATORY STOP' UPON DEFENDANT/APPELLANT.
 {¶ 13} "III. THE TRIAL COURT ERRONEOUSLY FOUND DEFENDANT/APPELLANT GUILTY BY CONSIDERING EVIDENCE THAT SHOULD HAVE BEEN SUPPRESSED." *Page 5 
 I., II. {¶ 14} Appellant argues in his first and second Assignments of Error the trial court erred in denying Appellant's motion to suppress. As the character of the police officer's interaction with Appellant is relevant to both Assignments of Error, we will discuss the Assignments simultaneously.
 {¶ 15} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 485; State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172;State v. Claytor (1993), 85 Ohio App.3d 623, 620 N.E.2d 906;Guysinger. As the United States Supreme Court held in Ornelas v.U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, " . . . as a general matter *Page 6 
determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 16} Appellant argues in his first Assignment of Error, the trial court erred in characterizing the interaction between Appellant and Officer Benner as a consensual encounter, stating that rather it was an investigatory stop thereby implicating Appellant's Fourth Amendment protections. He argues in his second Assignment of Error, if it is determined that the interaction was not a consensual encounter, then Officer Benner did not have reasonable suspicion to perform an investigatory stop. In the trial court's judgment entry denying Appellant's motion to suppress, it stated:
 {¶ 17} "The Court, after considering the evidence presented by the State and by the Defendant, finds that the State possessed sufficient reasonable suspicion of criminal activity to stop the Defendant and request identification at approximately 12:30 a.m. when they observed the Defendant carrying two large trash bags down a residential street.
 {¶ 18} "The Defendant was obviously not bringing trash to the curb from a home in which he resided. He then lied to the police when asked for information about his whereabouts or identity.
 {¶ 19} "Further, the Court notes that this type of encounter between the police as outlined here and the Defendant was consensual. The police stopped, asked him what was going on and did not place him under arrest, ask him to get in the cruiser, or do anything more than ask him who he was and why he appeared to be carrying articles from the direction of the recycling facility a few blocks down the street where numerous thefts had been reported. The Defendant was unable to even tell them the street *Page 7 
address where he was supposed to be residing or articulate that he was in his own front yard, if that is even the case."
 {¶ 20} In Terry v. Ohio (1968), 392 U.S. 1, 22, 88 S.Ct. 1868,20 L.Ed.2d 889, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant toTerry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v.Freeman (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus.
 {¶ 21} Our first inquiry is whether or not the interaction between Appellant and Officer Benner was a "consensual encounter" or a stop:
 {¶ 22} "The first type is a consensual encounter. Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away. The request to examine one's identification does not make an encounter nonconsensual. Nor does the request to search a person's belongings. The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. Once a person's liberty has been restrained, the *Page 8 
encounter loses its consensual nature and falls into one of the next two Supreme Court categories. (Citations omitted).
 {¶ 23} "* * *
 {¶ 24} "The second type of encounter is a `Terry stop' or an investigatory detention. The investigatory detention is more intrusive than a consensual encounter, but less intrusive than a formal custodial arrest. The investigatory detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions. Terry, supra. A person is seized under this category when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority a reasonable person would have believed that he was not free to leave or is compelled to respond to questions.* * *" (Citations omitted.) State v. Taylor
(1995), 106 Ohio App.3d 741, 747-748, 667 N.E.2d 60.
 {¶ 25} Upon review of facts in this case as testified to by Officer Benner and Appellant, we find that the interaction between Appellant and Officer Benner rises to the level of a investigatory detention. At 12:30 a.m., Officer Benner was patrolling near Legends Smelting, a recycling center where thefts of copper and tin have been reported. The officer observed Appellant walking in the vicinity of the recycling center while carrying two large, black trash bags. The officer parked his cruiser, called to Appellant to come over and asked him a few questions.
 {¶ 26} While Officer Benner did not testify to this, nor does the trial court find this in its judgment entry, Appellant testified that before Officer Benner asked for Appellant's identification, Officer Benner instructed Appellant to put the trash bags down and sit on the side of the road. It was after Appellant was seated that Appellant testifies that *Page 9 
Officer Benner requested Appellant's identification. Upon the officer's request, Appellant took out his identification, which happened to be in a clear sandwich bag that also contained a hypodermic needle, shoestring, several needle caps and a short straw.
 {¶ 27} Reviewing Officer Benner's detention of Appellant under the totality of the circumstances presented to the officer, we find that there were specific and articulable facts to warrant the brief detention of Appellant under Terry, supra. Further, when Appellant voluntarily withdrew the clear sandwich bag containing the hypodermic needle, shoestring and short straw, we find probable cause existed to arrest Appellant for possession of drug paraphernalia and the subsequent search of Appellant was lawful.
 {¶ 28} Accordingly, we find the trial court did not err in denying Appellant's motion to suppress. Appellant's second Assignment of Error is overruled.
 {¶ 29} Further, based upon our disposition of the Appellant's second Assignment of Error, we find the first Assignment of Error to be moot.
 III. {¶ 30} Appellant argues in his third Assignment of Error that the trial court's erroneous denial of Appellant's motion to suppress was prejudicial to Appellant in the trial court's consideration of Appellant's no contest plea. Pursuant to our disposition of Appellant's second Assignment of Error wherein we determined the trial court did not err in denying Appellant's motion to suppress, we disagree with Appellant and overrule his third Assignment of Error. *Page 10 
 {¶ 31} The judgment of the Licking County Court of Common Pleas is affirmed.
By Delaney, J. Hoffman, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs to Appellant. *Page 1